UNITED STATES of America, Plaintiff,

v.

Nathan Fred MARKS, Defendant.

Cr. No. 66-39.

United States District Court
D. Oregon.

Nov. 23, 1966.

Norman E. Sepenuk, Asst. U. S. Atty., Portland, Or., for plaintiff.

Randall Jones and Bruce Spaulding, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for defendant.

## ORDER

KILKENNY, District Judge.

This matter is before the Court on defendant's motion for a judgment of acquittal and, in the alternate, for a new trial.

At the outset, I express the view that the defendant, on the record in this case, could well be likened to a miniature Ponzi. That in his relations with his victims, as shown by the testimony, he was a common cheat and a complete fraud, there is no doubt. How successful he was in his fraudulent schemes is clearly demonstrated by the fact that he ensnared not only the innocent, but also the "sharpies", including attorneys on the road to disbarment for somewhat similar schemes. His acquittal on Counts Two and Three, in my opinion, can only be explained by the "blast" of the United States Court of Appeals for the Ninth Circuit against the Government's principal witness. This "blast" appeared in newspapers of wide circulation and on TV and radio on the fourth day of the trial.

Although I carefully cautioned the members of the jury against reading anything in the newspapers or listening to anything on TV or the radio about this case, I did not anticipate that the chief Government witness in this case would be roundly criticized in connection with his testimony in another tax case. That some, if not all, of the members of the jury read or listened to this criticism is beyond question.

Be that as it may, defendant was convicted on only one count to evade and defeat a substantial part of his income tax. Neither the jury, nor the Court, is concerned with the defendant's fraudulent conduct, except insofar as it relates to the count on which the defendant was convicted.

■ One of the defendant's principal complaints is that the Court did not inform the jury on the tax rate to be applied in computing the tax deficiency. It is evident that neither the Government, nor defendant's counsel, were of the belief that these schedules and rates should be submitted to the jury. No requested instructions on that point were submitted, nor was the question in any way raised by the defendant. Obviously, at the time of the trial, all participants, including the Court, felt that the tax deficiency, if any, was a subject for expert testimony. Manifestly, the theory that the rate schedules should have been submitted to the jury is an afterthought on the part of counsel for defendant. The trial of the case consumed in excess of five days. I do not believe that the defendant should be now permitted to raise this question.

■■ In any event, it is my view that it was not necessary for the Government to introduce evidence as to the exact amount of the additional tax due. The case is made when the Government pre-

sents substantial evidence from which the jury could find that a substantial amount *of net income* was not reported and that the failure to so report was willful and intentional. The amount of the additional income tax is not the important feature as long as it was a substantial sum. Watts v. United States, 212 F.2d 275 (10th Cir. 1954). Of similar import is United States v. Nunan, 236 F.2d 576 (2d Cir. 1956).

■ On the record before me, there is substantial evidence on which the jury could find that the defendant had willfully failed to report over $2,000.00 in taxable income on this particular count. Of course, the tax on such unreported income would be substantial.

■ There is no merit in the defendant's contention that he is entitled to the net loss carry-over for the year 1960 of M & M Salvage Company. This is a company which filed a separate corporate tax return and there is nothing in the record which supports defendant's theory that the corporation should be treated as a sham and its net loss carried forward to offset income on the defendant's individual tax return. The fact that the Government may have claimed that the Hedy Marks Foundation and Royal Acceptance Corporation were shams and that the defendant accepted the Government's theory on these two organizations, does not support a theory that M & M Salvage Company should likewise be treated as a sham. It should be added that this theory is also an afterthought on behalf of the defendant. No such theory was submitted at the time of the trial. Additionally, the tax return on which the defendant relies was offered in evidence and received for the specific purpose of countering the defendant's contention that he made a $2,500.00 charitable contribution. The exhibit would indicate that the property which was the basis of the alleged gift was of little, if any, value.

■ Obviously, the jury did not believe the testimony with reference to the value of the property involved in the alleged charitable gift. On the record, the jury might well find that the property involved in the gift was of little, if any, value.

I have carefully considered the voluminous briefs filed by counsel for defendant and have analyzed the cited cases. I am convinced that the case was properly submitted to the jury and that defendant had a fair trial. The alleged newly discovered evidence was obviously available to the defendant at the time of trial. Moreover, such evidence would be only repetitive of that already in the record.

Therefore, the defendant's motion for a judgment of acquittal and, in the alternate, for a new trial, must be denied.

It is so ordered.